INGRID YESENIA BARRETO
QUINONES,

            Plaintiff,

v.                                                    Case No:  6:16-cv-1518-Orl-DCI

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

## MEMORANDUM OF DECISION

Ingrid Yesenia Barreto Quinones (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for a period of disability, Social Security Disability Insurance (SSDI), and Supplemental Security Income (SSI) payments.  Doc. 1.  Claimant argues that the Administrative Law Judge (ALJ) erred by: 1) failing to comply with Social Security Ruling 00-4p; and 2) finding Claimant's testimony concerning her limitations not credible.  Doc. 22 at 17-30.  Claimant requests that the matter be remanded for further administrative proceedings.  *Id*. at 30.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY.

This case stems from Claimant's applications for a period of disability, SSDI, and SSI payments, protectively filed on March 19, 2013.  Doc. 22 at 1.  Claimant alleged a disability onset date of May 15, 2011.  *Id.*  On April 6, 2015, the ALJ entered a decision finding that Claimant was capable of performing a limited range of sedentary work, although she could not perform her past relevant work as a nurse.  R. 26-34.  Thus, the ALJ concluded that Claimant was not disabled.  R.

34. On June 22, 2016, the Commissioner's Appeals Council denied Claimant's request for review. Doc. 22 at 2. On August 25, 2016, the Complaint was filed timely in this Court requesting that this Court remand the case for further administrative proceedings. Doc. 1. This action is therefore ripe for judicial review under 42 U.S.C. § 405(g).

## II.    **THE ALJ'S DECISION**.

The ALJ issued the operative decision on April 6, 2015. R. 22-34. The ALJ found that Claimant had the following severe impairments: asthma, congenital hip dysplasia, chronic pain, congenital foot deformity, and chronic leg length discrepancy. R. 26. The ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals any listed impairment. *Id.*

The ALJ found that "claimant has the residual functional capacity [(RFC)] to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." *Id.* Specifically, the ALJ imposed the following additional limitations within the RFC:

> [Claimant] can lift and/or carry no more than 10 pounds. She can stand and/or walk with normal breaks for a total of two hours in an eight-hour workday. She can sit with normal breaks for a total of six hours in an eight-hour workday. She would require a sit/stand option while remaining at the workstation on an at will basis (this option means that the claimant could alternate sitting/standing while perform her assigned duties). The claimant should avoid the frequent ascending and descending of stairs. She should avoid frequent pushing and pulling motions with her lower extremities within the aforementioned weight restrictions. The claimant, due to mild to moderate pain and medication side effects, should avoid hazards in the workplace such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and on the ground unprotected areas of holes and pits. She can perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling. The claimant should avoid the climbing of ropes, scaffolds, and of ladders exceeding six feet. She should be allowed to elevate either lower extremity to foot stool level at will.

R. 26-27.[1]  The ALJ, in light of this RFC, found that Claimant was not able to perform her past relevant work as a nurse.  R. 32.  However, based upon the vocational expert's testimony, the ALJ found that Claimant was able to perform the following jobs existing in the national economy: food and beverage clerk; addresser; and document preparer.  R. 33.  Thus, the ALJ found that Claimant was not disabled from her alleged onset date, May 15, 2011, through the date of the decision, April 6, 2015.  R. 33-34.

## III.    STANDARD OF REVIEW.

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The Court must view

---

[1] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a); 416.967(a).

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV.   ANALYSIS.

### A.  Social Security Ruling 00-4p.

Claimant asserts that the ALJ failed to comply with Social Security Ruling (SSR) 00-4p.[2] Doc. 22 at 17-18. According to Claimant, conflicts existed between the testimony of the Vocational Expert (VE) and the Dictionary of Occupational Titles (DOT), and the ALJ failed to obtain a reasonable explanation for these conflicts. *Id.* However, Claimant failed to argue explicitly either that the ALJ applied an incorrect legal standard or that the ALJ's decision was not based upon substantial evidence, and failed also to cite any legal authority supporting her request of remand on the basis of the alleged violation identified by Claimant. *See id.* In response, the Commissioner makes a three prong argument: (1) there was no conflict between the VE's testimony and the DOT; (2) even assuming a conflict, the VE provided a reasonable explanation; and (3) even if there were a violation of SSR 00-4p, remand would not be appropriate because Claimant has failed to establish prejudice. Doc. 22 at 18-21.

_____

[2] The Eleventh Circuit has stated that "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference[.]" *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citation omitted).

At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and ability to do past relevant work. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). The ALJ may rely on a VE's testimony in determining whether a claimant can perform his or her past relevant work. *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) (citing 20 C.F.R. § 404.1560(b)(2)).[3] In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which is accurate and includes all of a claimant's limitations. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ, however, is not required to include each and every symptom of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical findings that the ALJ properly rejected as unsupported, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004), in the hypothetical question.

Further, the Eleventh Circuit has explained that "[i]f there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT because 'the DOT is not the sole source of admissible information concerning jobs.'" *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (quoting *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999)). Indeed, "[t]he DOT is not comprehensive, . . . the SSA does not consider it to be dispositive [, and] a VE is 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Id.* (quoting *Phillips,* 357 F.3d at 1240). Specifically, as to the SSR at issue here, the Circuit explained that:

> SSR 00-4p states that when a VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between that VE's testimony and the DOT. SSR 00-4p. When the VE's

---

[3] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

testimony is inconsistent with the DOT, the ALJ must resolve this conflict before relying on the VE to determine whether the individual is or is not disabled.

*Id.* In *Leigh*, the VE did not alert the ALJ to any conflict between the DOT and the VE's testimony, and the Circuit found that, even if there were a conflict between the DOT and the VE's testimony, the ALJ did not err in simply relying upon the VE's testimony. *Id.* (citing *Jones,* 190 F.3d at 1229-30 (explaining that the testimony of a VE trumps the DOT where there is an inconsistency)); *see also Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011) (even assuming that an inconsistency existed, no error in relying on VE testimony because it trumps any inconsistent provision of the DOT); *Peeler v. Comm'r of Soc. Sec.*, 400 F. App'x 492, 496 (11th Cir. 2010) ("The ALJ did not err in relying on Dr. Feldman's testimony even if it conflicted with information in the DOT because under our precedent Dr. Feldman's testimony trumps the DOT."); *Sollars-D'Annunzio v. Astrue*, No. 5:08-CV-80-OC-GRJ, 2009 WL 302170, at *9-10 (M.D. Fla. Feb. 6, 2009) (finding that "the law of the Circuit provides that where there is a conflict between the testimony of the VE and the description in the DOT the testimony of the VE trumps the DOT").

In addition, pursuant to SSR 00-4p, the ALJ is only required to resolve a conflict between the DOT and the VE's testimony if the ALJ is aware of that conflict. *See Sollars-D'Annunzio*, 2009 WL 302170, at *9 ("SSR 00–4p only requires the VE to resolve the conflict when he is made aware of the conflict"). As the court in *Sollars-D'Annunzio* explained:

> The ALJ has two obligations under SSR 00–4p with regard to reconciling any conflict between the testimony of the VE and the DOT. First, "[w]hen a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflicts between that VE ... evidence and information provided in the DOT." This means the ALJ must ask if there is a conflict. The second requirement under SSR 00–4p provides that "when there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled." This means that where the ALJ learns of a conflict he is required to discuss and resolve the conflict.

*Id*. (internal citations omitted). In that case, the court found that "the ALJ complied with this

obligation by directing the VE to point out any conflicts," based on the following colloquy:

> ALJ: Let me request from you at the outset that if there are any conflicts with the
> information that you provide with the Dictionary of Occupational Titles including
> its companion publication, The Selected Characteristics of Occupations defined in
> the revised Dictionary of Occupational Titles, that you advise me. Otherwise, I will
> assume there are no such conflicts. Is that fair?
>
> VE: Yes, Your Honor.

*Id*. Thus, the court found that "by expressly directing the VE to advise the ALJ of any

inconsistencies, the ALJ satisfied the first requirement of SSR 00-4p." *Id*. If the VE does not

advise the ALJ of a conflict, and the ALJ is not otherwise aware of a conflict, there is no violation

of SSR 00-4p. *See id*.; *see also Wright v. Comm'r of Soc. Sec.*, No. 6:12-CV-1640-ORL-31, 2014

WL 982626, at *9 (M.D. Fla. Mar. 12, 2014) ("The plain language of the SSR provides that the

ALJ should inquire on the record as to whether the testimony is consistent with the DOT and, when

there is an *apparent* unresolved conflict, the adjudicator must elicit a reasonable explanation for

the conflict before relying on the VE evidence.") (emphasis in original).

Here, the ALJ expressly directed the VE to advise the ALJ of any conflict between the

VE's testimony and the DOT, and the VE failed to make the ALJ aware of any such conflict.

> ALJ: Let me request from you at the outset that if there are any conflicts
> with the information that you provide with the Dictionary of
> Occupational Titles, that you so advise us.
>
> VE: Okay.

R. 774-75. Thus, as in *Sollars-D'Annunzio*, the ALJ fulfilled his first obligation under SSR 00-4p.

But before moving on to consider whether the ALJ complied with his second obligation as

described in *Sollars-D'Annunzio* (i.e., "where the ALJ learns of a conflict he is required to discuss

and resolve the conflict"), the Court must necessarily find that there is a conflict for the ALJ to

resolve, and, if there is, that the ALJ was aware of such a conflict and discussed and resolved it. As described in the following paragraphs, the Court finds that Claimant has not established that there was a *conflict* between the VE's testimony and the DOT that would give rise to the ALJ's obligation to discuss and resolve such a conflict. Nevertheless, if there were a conflict, the ALJ sufficiently discussed that conflict and resolved it. And regardless, the ALJ did not err in relying upon the VE's testimony.

During the course of VE's testimony, the ALJ asked hypothetical questions, including a hypothetical question that involved a limited range of sedentary work, which resulted in the VE testifying that a hypothetical claimant could perform the jobs of food and beverage clerk, addresser, and document preparer. R. 774-804. The VE also testified that a hypothetical claimant could perform those jobs with additional limitations, including a requirement that a hypothetical claimant be permitted to sit and stand at will and a further requirement that a hypothetical claimant be permitted to elevate the claimant's feet to foot-stool level at will. *Id*. Claimant's representative, an attorney, attempted to cross-examine the VE at length about the VE's basis for concluding that a hypothetical claimant could perform those jobs with those additional restrictions. *Id*. In particular, during the VE's testimony about the sit/stand-at-will restriction, Claimant's representative questioned the expert in an attempt to establish that the VE had not actually observed someone performing the identified occupations sitting and standing at will – the apparent point being that: if the VE had not seen a particular class of employee performing the job with the identified restrictions, then how could the VE opine that the hypothetical claimant could perform those occupations with the listed restrictions. *Id*. Thus, the following exchange occurred, which is cited to by Claimant in her brief:

ATTY:[4]      Have you actually observed, with the food and beverage order clerk, people being -- employees being able to switch from sitting to standing at will?

VE:          I don't need to observe it. It's quite obvious.

ATTY:        Okay. If you haven't observed it and it's not delineated in the Bureau of Occupational --

ALJ:         Okay. Well, I think -- I think I understand your point -- is that if a hypothetical is posed to a vocational expert and the vocational expert gives an opinion but hasn't specifically seen that event, that becomes a basis, in your opinion, to challenge the vocational expert because it's not may or may not be specifically addressed in the DOT.

ATTY:        Correct. And –

ALJ:         Okay. Well, at that point, the vocational expert is giving an opinion --

ATTY:        Correct.

ALJ:         -- based on his experience and hypotheticals. And your position is, well, how do you know if it's not in the DOT, and the vocational expert says, well, that's just my opinion, based on my 36 years of experience in the field.

ATTY:        Correct.

ALJ:         So then where do you go?

ATTY:        Then I'm wondering if she hasn't observed it and it's not in the DOT, how she knows.

ALJ:         Okay. Well, that becomes an argument for weight, I think.

***

ATTY:        Now, the job of addresser that you gave, when is the last time that you observed that job?

VE:          Probably about three years ago.

_____

[4] Claimant's attorney.

ATTY:      Okay. And have you observed employees having to alternate at will between sitting and standing as an addresser?

VE:        Yes.  Because they need to sometimes -- [inaudible] and go wait for something or go get something –

***

VE:        They don't just sit there. They go and get something.  They go - they can stand and work.  So yes, they're not sitting for eight hours.

ATTY:      What does an addresser do?

VE:        They're putting labels on envelopes, packages, all that stuff.

ATTY:      Okay. So you've actually observed -- how many employees have you observed being able to alternate at will between sitting and standing as an addresser?

VE:        One.

ATTY:      One employee in your 36 years of experience?

VE:        No. We're talking about the last -- three years ago.

ATTY:      Okay. So --

ALJ:       You're asking her to go back 36 years --

ATTY:      No.

***

ATTY:      Okay. So next is the document preparer.  When is the last time that you observed an employee performing that job?

VE:        That one would be about five years ago.

ATTY:      Okay. And have you observed any employee -- did you observe any employees working as a document preparer being able to alternate at will between sitting and standing?

VE:        One employee.

***

> ATTY:        Okay. Okay. Thank you. No further questions.

R. 789-92.  Just prior to that exchange, the VE, in another context, had explained that she relied upon her "vocational rehab experience of 36 years" in testifying.  R. 787.

Just after that exchange, the ALJ asked the VE to consider the same hypothetical, but with the additional restriction of a hypothetical claimant being allowed to elevate the hypothetical claimant's lower extremities to foot-stool height at will.  R. 793.  The VE testified that a hypothetical claimant could perform the three jobs at issue, and Claimant's counsel then proceeded to question the VE, and confirm that the VE had not personally observed a person performing those three jobs while elevating their lower extremities to foot-stool height at will.  R. 793-94.  The ALJ then questioned the VE as follows:

> ALJ:        Do you have an opinion whether it's a requirement for a vocational expert to personally observe all 12,000 of those positions [within the DOT] as to whether it will accommodate a foot elevation?
>
> VE:          I don't think it's necessary.
>
> ***
>
> ALJ:        Okay. Do you know if it's a requirement of vocational experts in general?
>
> VE:          No, it is not.

R. 795.

In the ALJ's decision, the ALJ made the following findings in relation to SSR 00-4p when making the determination that there are jobs that exist in significant numbers in the national economy that Claimant can perform (i.e., the jobs of food and beverage clerk, addresser, and document preparer):

> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the D.O.T., ***except for the consideration of the claimant's***

**need for a sit/stand option and the need to elevate either leg to stool level at will, which is not addressed in the D.O.T.** That testimony is based on the vocational expert's education and field experience, and is thus a reliable source of occupational information appropriate for consideration under SSR 00-4p.

R. 33 (emphasis added). [5]

Looking at the VE's testimony as a whole and the ALJ's findings in his decision, it appears that the DOT simply does not contain any information as to whether the jobs at issue can be performed with a sit/stand option or with a foot-stool elevation option. Certainly, the VE did not advise the ALJ of any such conflict. Thus, it is not clear to the Court that there was, in fact, any conflict between the VE's testimony and the DOT. And Claimant cites no authority suggesting that the lack of an explicit specification with the DOT is akin to a *conflict*, which seems to be the argument Claimant is necessarily making here.

Regardless, even assuming a conflict, the VE provided a reasonable explanation and complied with SSR 00-4p. During the course of the VE's testimony, the VE made clear that she relied upon her 36 years of vocational rehabilitation experience. Further, the VE testified that she had seen at least one employee performing each of the three jobs at issue while alternating at will between a sitting and a standing position. Thus, in his decision, the ALJ explained that the VE's opinion concerning the at-will restrictions "is based on the vocational expert's education and field experience, and is thus a reliable source of occupational information appropriate for consideration under SSR 00-4p." R. 33. While Claimant's attorney engaged in substantial cross-exanimation concerning the VE's personal observation of employees performing the jobs at issue with the at-will restrictions posed in the ALJ's hypotheticals, the VE opined that it was not necessary for a

---

[5] The ALJ made the identical findings when he determined that Claimant could not perform her past relevant work, but those are not the findings that Claimant is challenging. *See* Doc. 22 at 18 (quoting the ALJ's findings, with citation to R. 33).

VE to personally observe employees performing jobs subject to specific limitations in order to opine that the job could be performed with those limitations. The ALJ, taking that testimony into consideration, relied upon the VE's opinions. Thus, Court finds that the ALJ's reliance upon the VE's testimony was reasonable and complied with SSR 00-4p.

Finally, even if there were a violation of SSR 00-4p, remand would not be appropriate because Claimant has failed to argue – let alone establish – prejudice. Indeed, the VE's testimony trumps the DOT when there is a conflict. *See Leigh*, 496 F. App'x at 975. Thus, the ALJ did not err in relying upon the testimony of the VE. Therefore, the ALJ did not err at step four of the sequential process by purportedly failing to comply with SSR 00-4p.

### B. Credibility

Claimant argues that in considering her testimony concerning her pain and limitations, the ALJ failed to apply the correct legal standards and made findings not supported by substantial evidence. Doc. 22 at 21-25. The Commissioner essentially argues that the ALJ applied the correct legal standard in making his credibility determination, which, the Commissioner asserts, is supported by substantial evidence. Doc. 22 at 25-30.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and

persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at §§ 404.1529(c)(1)-(4), 416.929(c)(1)-(4). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. "Credibility determinations are the province of the ALJ." *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir.2005). The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

The ALJ held a hearing in this case on January 14, 2015. R. 746-813. At the hearing, Claimant, who was represented by counsel, testified that she worked as a licensed practical nurse in a nursing home from 2007 to 2009. R. 762. As to her limitations, according to Claimant: she was enrolled in a nursing program through 2014, but she dropped out because she could not sit for four hours, as required (R. 763-64); there was a seven-inch discrepancy in the length of her legs, which caused pain[6] (R. 768); she did not wear an orthotic because Medicaid did not cover it (R. 777); she could sit for only 30 to 35 minutes, stand for 10 minutes, and lift no more than five pounds (R. 765, 770); and she had to elevate her legs three times during the day for an hour each time (R. 769). Further, Claimant testified that she had two children, ages 2 and 13, who lived with her. R. 766. Both children had special needs, as one child was autistic and the other was bipolar. R. 810. Claimant explained that although she had separated from her husband, he would still help with the children, and Claimant's friend also came over two to three times a week to help with the

---

[6] The medical evidence of record does not support a seven-inch leg length discrepancy. According to the record evidence, the discrepancy is generally described as 4-6 centimeters. *See* R. 451 (5 cm); 496 (1/2 in.); 512 (2 cm); 585 (5 cm); 598 (2-3 in.); 602 (5 cm); *but see* 449 (5 in.).

children and cleaning.  R. 769.  Claimant testified that she could cook, but it took her longer than

normal because she needed to switch positions between sitting, standing, and lying down.  R. 769.

In addition to the testimony at the hearing, Claimant completed two supplemental questionnaires.

R. 253-55; 267.

In his decision, the ALJ found that Claimant's medically determinable impairments could

reasonably be expected to cause her alleged symptoms, but concluded that her statements

concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely

credible for the reasons explained in this decision."  R. 27.  First, the ALJ explained:

> In terms of the claimant's alleged impairments, treatment records,
> findings on physical examinations, and imaging reports do not show
> the degree of ongoing abnormality that would preclude a wide range
> of sedentary work.

*Id*.  The ALJ then discussed the medical record evidence in detail.[7]  At the conclusion of that

discussion, the ALJ turned again to Claimant's testimony, and explained his credibility

determination as follows in relation to that medical evidence:

> While the claimant reported severe limitations due to asthma, congenital hip
> dysplasia, chronic pain, congenital foot deformity, and chronic leg length
> discrepancy, the medical evidence viewed in its entirety fails to show a disabling
> level of impairment. Imaging revealed that her right leg was 4-6 centimeters shorter
> than her left leg, a congenital deformity of her right foot, and there was moderate
> dysplasia in her left hip (Exhibits 1F/19, 3F, and 16F). Yet, the record reflects
> significant gaps in the claimant's history of treatment.  Specifically, there is no
> evidence of treatment from February 2013 to August 2014.  In addition, the
> claimant did not use an assistive device for ambulation, straight leg raises were
> negative bilaterally, her strength was full at 5/5, and her sensation was intact on
> physical examinations (Exhibits 3F, 7F, 11F, 16F, 17F, 20F, and 21F). There is also
> no evidence that the claimant has undergone surgery or prolonged physical therapy
> for the pain in her back, hips, legs, right foot, or right ankle during the period at
> issue.  Specifically, the record reflects that she last underwent left hip surgery in

---

[7] The Court notes that Claimant has not challenged the ALJ's consideration of the medical
evidence or the weight ascribed to any particular medical opinion.  *See Crawford v. Comm'r of
Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (refusing to consider an argument
that the claimant failed to raise before the district court).

1993 (Exhibit 16F/8) and only attended physical therapy for approximately four months in 2014 (Exhibit 14F). Moreover, the treatment record does not refer to significant medication side effects in support of the claimant's allegations.

R. 29. After a brief discussion of Claimant's asthma, the ALJ again turned to Claimant's testimony, this time discussing her activities of daily living and exertional limitations:

> The undersigned also finds the claimant's reported daily activities are not strongly consistent with complaints of disabling symptoms and limitations. For example, the claimant reported she cared for her 13-year-old daughter and 2-year-old son, drove a vehicle, bathed and dressed independently, prepared meals, did laundry, and shopped (Exhibits 7E, 10E, 13E, 22E, and Hearing Testimony).

> Overall, the claimant's allegations are not supported by the evidence to the extent that she would be precluded from all work activity. While the claimant would require work at the sedentary exertional level with a sit/stand option, limitations in postural and environmental activities, and the need to elevate either leg to stool level at will, those restrictions would reasonably accommodate the claimant's symptoms.

R. 30. The ALJ then discussed the medical opinions contained within the record at length, and weighed each opinion. Thereafter, the ALJ turned yet again to Claimant's testimony, and made the following observations:

> The claimant is a very pleasant individual. At the hearing, she was well represented by an experienced representative. By way of background, this fine individual obtained a degree in nursing. Whether the degree was a LPN or RN cannot be precisely determined. Nonetheless, the claimant worked for several years with some success in the medical field, which is very commendable on her part but which underscores the soundness of the residual functional capacity herein. The claimant is further raising two small children, which again is very commendable and wholesome. Childbirth was apparently normal and pregnancy issues were in part a factor in leaving employment and moving to Florida to raise her new family. Altogether (the arduous nature of being a student, the employment in the difficult medical field, and childbirth issues), the claimant's history is remarkable, commendable, and quite wholesome but detracts somewhat from overall credibility within the context of disability. This outstanding claimant does face physical challenges and the undersigned is not unsympathetic with her difficulties. Nonetheless, this fine individual has significant potential.

R. 32.

In asserting that the ALJ's credibility determination was not supported by substantial evidence, Claimant made four arguments.[8] Doc. 22 at 22-24. The Court will discuss those arguments *seriatim* in the following paragraphs, but, as an initial matter, the Court notes that only with regards to the fourth argument does Claimant even reference her testimony. In other words, with one exception, Claimant provides the Court with no indication of which testimony the ALJ allegedly improperly deemed lacked sufficient credibility. It is axiomatic that the claimant bears the burden of demonstrating that he or she is disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The failure of Claimant to identify which testimony the ALJ allegedly improperly discredited frustrates the Court's review of Claimant's arguments. As such, the Court finds that Claimant's first three arguments attacking the ALJ's credibility determination – the arguments that are divorced from any references to the portions of Claimant's testimony that was allegedly improperly discredited by the ALJ – do not provide a proper basis for the Court to reverse the ALJ's credibility determination. Regardless, the Court will discuss and consider each of Claimant's arguments.

First, Claimant took issue with the ALJ's comment that the record reflects significant gaps in Claimant's treatment history, asserting that gaps in treatment are not a proper basis to discredit Claimant because it is "unclear" if Claimant had medical insurance during that period. Doc. 22 at 22 (citing to R. 29). Without citation to authority, Claimant asserts that the ALJ should have asked

_____

[8] In the heading of this section of her argument, and in the conclusion sentence of this section, Claimant states that the ALJ failed to apply the correct legal standards. Doc. 22 at 22; 25. However, besides those conclusory assertions, Claimant never actually made an argument that the ALJ failed to apply the correct legal standards. Accordingly, the Court finds that Claimant waived that argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue). Regardless, the Court has considered each of the four arguments made by Claimant.

at the hearing whether Claimant had insurance during the periods of gaps in treatment. *Id.* In response, the Commissioner explained that the ALJ properly noted a significant gap in treatment from February 2013 to August 2014, and that the record evidenced another gap in treatment from November 2011 to November 2012. Doc. 22 at 26. The Court agrees with the Commissioner that significant gaps in treatment are properly considered in weighing Claimant's credibility, and there is precedent within this Circuit for the consideration of exactly that kind of record evidence. *See See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (finding a gap in medical treatment to be one of several factors that weighed against claimant's credibility that pain was debilitating). Further, there is no merit to Claimant's assertion that the ALJ should have inquired into the reasons for Claimant's gaps in treatment. *See, e.g.*, *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 871-72 (11th Cir. 2016) (finding that the claimant failed to demonstrate that the ALJ erred by not inquiring about the gap in the claimant's medical records). Indeed, Claimant does not even affirmatively allege – let alone point to record evidence – that the reason for the gaps in treatment was a lack of medical insurance or an ability to pay for treatment during the gaps in treatment. As such, Claimant's argument is supposition and does not provide a basis to reverse the ALJ's decision.

Second, Claimant takes issue with the ALJ's determination that Claimant's testimony was not credible, in part, because she "did not use an assistive device for ambulation, straight leg raises were negative bilaterally, her strength was full at 5/5, and her sensation was intact on physical examinations." Doc. 22 at 23 (quoting R. 29). Claimant asserts that the ALJ "cherry-picked" evidence in the medical record, because the ALJ focused on certain evidence and disregarded contrary evidence. *Id.* In support, Claimant points to three medical records: (1) a physical examination that showed moderate paraspinal tenderness and significant tenderness over her

buttocks (R. 451); (2) a physical examination that revealed mild to moderate paraspinal tenderness (R. 449); and (3) a physical examination that stated, without further explanation, that Claimant's "subjective complaints are consistent with the objective medical findings (R. 514). Doc. 22 at 23. In response, the Commissioner asserts that the record is replete with evidence supporting the ALJ's determination. Doc. 22 at 28 (citing R. 449, 451, 475, 586, 593, 610, 630, 636, 688). Of course, the issue before the Court is not whether there is evidence to support Claimant's testimony, but whether there is substantial evidence to support the ALJ's credibility determination. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence."). Having reviewed the record evidence, the Court agrees with the Commissioner – the ALJ's determination in this regard is supported by substantial evidence, including the evidence cited by the Commissioner. Further, what Claimant is asking the Court to do here is reweigh the evidence, and the Court declines to do so. Moreover, the record evidence cited by Claimant is not even inconsistent with the ALJ's determination. Indeed, Claimant identifies no evidence that actually contradicts the ALJ's statement that Claimant "did not use an assistive device for ambulation, straight leg raises were negative bilaterally, her strength was full at 5/5, and her sensation was intact on physical examinations." Doc. 22 at 23 (quoting R. 29). Thus, Claimant's argument is without merit.

Third, Claimant takes issue with the ALJ's determination that Claimant's testimony was not credible, in part, because she had not undergone surgery or prolonged physical therapy during the period at issue. *Id*. at 23-24. Without citation to legal authority, Claimant asserts that the ALJ erred because Claimant wanted to undergo surgery (R. 689) and because she participated in physical therapy for four months in 2014. Claimant also argues in a conclusory manner that the

ALJ erred when he discredited her testimony "because the treatment record did not refer to significant medication side effects in support of her claims." Doc. 22 at 24 (citing R. 29). In response, the Commissioner points out that Claimant declined surgery in 2013, as too invasive (R. 464), and that Claimant only completed four of 12 months of physical therapy (R. 539, 542-70). Doc. 22 at 28-29. The Commissioner also argues that the lack of any further physical therapy indicates conservative treatment and that Claimant chose not to take opioid medications because she was caring for her young children. *Id*. at 29. Having reviewed the record evidence, the Court agrees with the Commissioner – the ALJ's determination in this regard is supported by substantial evidence, including the evidence cited by the Commissioner. Further, what Claimant is again asking the Court to do here is reweigh the evidence, and the Court declines to do so.

Fourth, and finally, Claimant takes issue with the ALJ's determination that Claimant's testimony was not credible, in part, because of her daily activities. Doc. 22 at 24 (citing R. 30; 32). Citing to *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (explaining that the court did not believe that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability . . ."), Claimant notes that she testified at the hearing that (a) "she had difficulty taking care of her children and received help from her son's father and a friend"; (b) "she was able to cook, but a meal that a person could cook in thirty minutes would take her an hour and twenty minutes to complete"; and (c) it took so long for her to cook a meal "because she needed to switch positions between sitting, standing, and lying down." Doc. 22 at 24 (citing R. 768-69). Although this fourth argument represents the only time Claimant identified the testimony the ALJ allegedly improperly discredited, there is no argument as to how, exactly, the ALJ erred. In response, the Commissioner contends that the ALJ properly considered Claimant's activities of daily living, and that there is substantial evidence in support of the ALJ's

determination that those activities were not consistent with Claimant's complaints of disabling limitations. Id. at 29 (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (explaining daily activities are a relevant factor when evaluating a claimant's symptoms); *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints.") (citation omitted).

In considering Claimant's activities of daily living, the ALJ stated that those "activities are not strongly consistent with complaints of disabling symptoms and limitations. For example, the claimant reported she cared for her 13-year-old daughter and 2-year-old son, drove a vehicle, bathed and dressed independently, prepared meals, did laundry, and shopped" R. 30 (citing Exhibits 7E, 10E, 13E, 22E, and Hearing Testimony). The ALJ's conclusions are supported by substantial evidence, including by the evidence cited by the ALJ. Indeed, the record includes evidence not only of Claimant's activities related to domestic responsibilities, but also of other strenuous physical activities, including walking distances (R. 365, 470, 513, 535), joining a gym and doing walking and yoga for exercise (R. 470, 487), working out for one hour and doing "cardio" six days a week (R. 483), obtaining a doctor's recommendation to decrease cardio to 20-30 minutes per day, start weight training, and try "short burst high intensity training" (R. 484), and walking all day shopping (R. 634). Further, even if there was error, it is harmless, because Claimant's assertions that she had difficulty caring for her children, obtained help from the children's father and a friend to care for the children, and took a long time to cook meals because she had to alternate between sitting and standing are not inconsistent with the RFC. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination). Indeed, the RFC provided for less than the full range of sedentary work activity and allowed for a plethora

of exertional restrictions. The only possible restriction identified by Claimant not contained within the RFC is Claimant's testimony that she has to alternately lie down while cooking. And although that restriction is not supported directly by any evidence of record, nonetheless, to the extent there is any support for such a restriction, it is dealt with in the RFC's allowance that Claimant be able to elevate her feet at will.

In addition, the Court notes that the ALJ engaged in a lengthy discussion of Claimant's testimony throughout his decision. But Claimant did not attack all of the reasons the ALJ gave for discrediting Claimant's testimony: such as the ALJ's determination that "the medical evidence viewed in its entirety fails to show a disabling level of impairment" (R. 29) and the ALJ's determination that "[a]ltogether (the arduous nature of being a student, the employment in the difficult medical field, and childbirth issues), the claimant's history is remarkable, commendable, and quite wholesome but detracts somewhat from overall credibility within the context of disability." R. 32. The Court finds that both of those reasons cited by the ALJ were supported by substantial evidence. And, even if some of the reasons cited by the ALJ were not supported by substantial evidence, the fact that substantial evidence supports the decision as a whole is cause to affirm that decision. *See Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859-60 (11th Cir. 2012) (noting that remand was unwarranted even if the ALJ cited an improper finding to support his adverse credibility determination because there was sufficient evidence within the record to support the ALJ's other reasoning for his adverse credibility determination); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that an ALJ's failure to consider a claimant's inability to afford treatment did not constitute reversible error when the ALJ did not rely primarily on a lack of treatment to find that the claimant was not disabled); s*ee also D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that

ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it."); *see also Gilmore v. Astrue*, 2010 WL 989635, at \*14-18 (N.D. Fla. Feb. 18, 2010) (finding that the ALJ's decision to discount a treating physician's opinion was supported by substantial evidence, even though two of the many reasons articulated by the ALJ were not supported by substantial evidence).

Most of Claimant's assertions, though, are simply requests that this Court weigh the evidence and find that it preponderates against the ALJ's decision. However, this Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips*, 357 F.3d at 1240 n.8 (quoting *Bloodsworth*, 703 F.2d at 1239). Here, as set forth in the foregoing paragraphs, the Commissioner's decision is supported by substantial evidence. Thus, the Court must affirm even if the Court found that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3 (11th Cir. 1991). The Court has reviewed the evidence of record and the ALJ's decision concerning Claimant's credibility, a decision uniquely within the province of the ALJ, and the Court finds that the decision is supported by substantial evidence.

V.     **CONCLUSION**.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on February 12, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Douglas A. Walker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
3505 Lake Lynda Dr
Suite 300
Orlando, FL 32817-9801